PHILIP STEVEN HORNE, ESQ. 173183
LAW OFFICES OF PHILIP STEVEN HORNE, ESQ.

| | |
|---|---|
| Office: | 1155 Market Street |
| | San Francisco, California 94103 |
| Voice: | 415.552.2740 and 415.553.7781 |
| Facsimile: | 415.552.2770 and 415.553.7791 |
| Electronic: | philhorne@sbcglobal.net |
| Post: | 377 Hermann Street |
| | San Francisco, California 94117 |

ATTORNEYS FOR PLAINTIFFS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LEITH PATRICK KNAPP,
THOMAS HAMPTON DEAR,

    Plaintiffs,

v.

WACHOVIA CORPORATION,
a Corporation,
WACHOVIA SBA LENDING, INC.,
a Corporation,
KENNETH MCGUIRE, an Individual,
ANN NONEMAKER, an Individual,
and DOES 1-300,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. C-07-04551-WDB

***VERIFIED***
**COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF FOR
DISCRIMINATION AND RETALIATION
WITH DEMAND FOR JURY TRIAL FOR:**

**1. FAILING TO ACCOMMODATE
DISABILITY, MAINTAINING A
HOSTILE WORK ENVIRONMENT, AND
DISCRIMINATION AND RETALIATION
(42 United States Code Section 2000e;
42 United States Code Section 12101)**

**2. FAILING TO ACCOMMODATE
DISABILITY, MAINTAINING A
HOSTILE WORK ENVIRONMENT, AND
DISCRIMINATION AND RETALIATION
(Government Code Section 12900)**

**3. DISCRIMINATION AND RETALIATION
(Common Law)**

**4. WHISTLEBLOWER RETALIATION
(Labor Code Section 1102.5)**

**5. CONVERSION
(Common Law)**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

)  **6.  INTENTIONALLY CAUSING INJURY**
)         **(Civil Code 1714 and Common Law)**
)
)  **7.  WRONGFUL BUSINESS ACT**
)         **(Business and Professions Code 17200)**
)
)  **8.  BREACH OF CONTRACT**
)         **(Civil Code and Common Law)**
)

DEMAND FOR JURY TRIAL

1.      Plaintiffs hereby demand a trial by jury.


JURISDICTION AND VENUE

2.      The United States District Court has federal question jurisdiction as follows:  The present action

is brought under 42 United States Code Section 2000e et seq., and 42 United States Code 12101

et seq.  The United States District Court has diversity jurisdiction as follows:  Plaintiffs are

residents of California and defendant corporations are nationally headquartered and have their

principle place of business in North Carolina.  This matter is venued in the Northern District

because:  1) Plaintiff Knapp worked and would have continued working in the Northern District

but for the alleged unlawful practices under Government Code 12965(b); 2) Plaintiff Dear

worked and would have continued working in the Northern District but for the alleged unlawful

practices under Government Code 12965(b); and 3) Defendant Corporations are California

headquartered and have their California principle place of business in Oakland.


PLAINTIFFS

3.      Plaintiff Leith Patrick Knapp is a 54-year-old man of same gender affectional/sexual orientation,

disabled by HIV disease and alcohol and tobacco dependency, with 21 years of sobriety.

Plaintiff Thomas Hampton Dear is a 45-year-old man of same gender affectional/sexual

orientation, disabled by alcohol and tobacco dependency, with eighteen years of sobriety.  Knapp

and Dear are domestic partners registered by the State of California.

DEFENDANTS

4.    Defendants Wachovia Corporation and Wachovia SBA Lending Inc., are, and at all times were, corporations duly licensed to operate in the State of California with 110,000 employees; world headquarters at One Wachovia Tower, Charlotte, North Carolina; and California headquarters and California principle place of business at 1901 Harrison Street in Oakland, California. Defendants Kenneth McGuire and Ann Nonemaker are, and at all times were, individuals and managing agents and officers (vice presidents) of Defendant Corporations.  At all times, all defendants were engaged in the business of providing banking services.

DOES

5.    Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1-300, inclusive, and therefore sues these defendants by fictitious name.  Plaintiffs will amend this complaint to allege the true names and capacities when ascertained.  Each of these fictitiously named defendants is responsible, in some manner, for the misconduct herein and proximately caused plaintiffs' injuries.

AGENCY

6.    At all times, defendants were agents, managing agents, and employees each of the other.  In committing the following misconduct, each defendant was acting within the course and scope of said agency and employment.

///

///

///

CONSPIRACY

7. Each of the defendants was a co-conspirator of the remaining defendants and each planned, performed, failed to stop, failed to investigate or report, condoned and ratified, and concealed the misconduct.

HOSTILE WORK ENVIRONMENT

8. Defendants maintain a HOSTILE WORK ENVIRONMENT in which:  1) Persons with medical condition-related disabilities are routinely ostracized; subjected to harassment, discrimination, and retaliation; and constructively terminated; 2) Persons with recovery-related disabilities are routinely ostracized; subjected to harassment, discrimination, and retaliation; and constructively terminated; 3) Persons who make requests for reasonable accommodation are routinely ostracized; subjected to harassment, discrimination, and retaliation; and constructively terminated; 4) Persons of same gender affectional/sexual orientation are routinely ostracized; subjected to harassment, discrimination, and retaliation; and constructively terminated; and 5) Persons who complain about harassment, hostile work environment, discrimination and retaliation, or failure to accommodate, or who otherwise engage in whistleblowing are routinely ostracized; subjected to harassment, discrimination, and retaliation; and constructively terminated.

POLICY AND PRACTICE

9. Defendants have a POLICY AND PRACTICE of ostracizing; subjecting to harassment, discrimination, and retaliation; and constructively terminating:  1) Persons with medical condition-related disabilities; 2) Persons with recovery-related disabilities; 3) Persons who make

requests for reasonable accommodation; 4) Persons of same gender affectional/sexual orientation; 5) Persons who complain about harassment, hostile work environment, discrimination and retaliation, or failure to accommodate, or who otherwise engage in whistleblowing.

CONTRACT

10.     On or about 2005 November 01, defendants hired Plaintiff Knapp with a salary of $40,000.00 plus commissions ($30,000.00 to $300,000.00) annually.  On or about 2004 April 21, defendants hired Plaintiff Dear with a salary of $45,000.00 plus commissions ($30,000.00 to $300,000.00) annually.  Defendants promised:  1) To abide by the employment manual which prohibits harassment,[1] discrimination against persons on account of disability and/or affectional/sexual orientation[2], and retaliation against persons who make requests for reasonable accommodation;

_____

[1]    Said employment manual provides,

   "ANTI-HARASSMENT.  Wachovia prohibits harassment and commits to providing a professional work environment.  Harassment is any offensive conduct based on an employee's race, sex, gender, gender identity, national origin, color, disability, age, sexual orientation, veteran status, marital status, religion, or any other status protected by law.  Unlawful harassment exists when acceptance of such conduct is made, explicitly or implicitly, a term or condition of employment, employment decisions are based on whether an employee accepts or rejects such conduct, or such conduct unreasonably interferes with an employee's work performance or creates an intimidating, hostile, or offensive work environment.
                                        *         *         *
   Wachovia will promptly investigate all reports of harassment in as impartial and confidential a manner as possible and, when appropriate, will take corrective and preventative action."

[2]    Said employment manual further provides:

   "WORKPLACE.  Wachovia is committed to maintaining a corporate environment marked by safe, professional and congenial working conditions and respect for the

complaints of harassment, hostile work environment, discrimination, and/or retaliation, the

failure to accommodate, or otherwise engage in whistleblowing[3] 2) To treat plaintiffs fairly—

dignity of all employees, customers and others with whom we interact. We embrace diversity, seeking new ideas and listening to and learning from others, and appreciate the unique capabilities and contributions of each person. Wachovia provides equal opportunity in all aspects of employment and will not tolerate any illegal discrimination or harassment of any kind. Wachovia has policies and procedures in effect that are designed to prevent illegal discrimination or harassment and which also provide an avenue of redress for any complaints of such conduct.

DIVERSITY.  [Wachovia is] committed to being an inclusive company where all people are treated fairly, recognized for their individuality, promoted based on performance, and encouraged to reach their full potential.  We believe in recognizing, understanding, and respecting differences among all people.  These differences include but are not limited to race, gender, gender identity, sexual orientation, work/life status, ethnic origin, culture, spiritual beliefs and practices, age, level, physical/mental ability, and veteran status.

ACCOMMODATION.  Wachovia supports the letter and spirit of the Americans with Disabilities Act and seeks to give full and equal employment opportunities to all people capable of successfully performing the essential functions of each of Wachovia's positions with or without accommodation.

Wachovia provides employees and applicants with reasonable accommodations necessary to help them perform the essential functions of their positions, but may refuse requests for accommodation if they would impose an undue hardship on the Company."

[3]    Said employment manual further provides:

"EQUAL EMPLOYMENT OPPORTUNITY.  Wachovia is dedicated to equality of opportunity in its community. It has been and will continue to be the policy of Wachovia to be fair and impartial in all of its relations with its employees and applicants for employment, and to base all employment-related decisions upon valid job-related factors, without regard to race, religion, color, gender, gender identity, age, national origin, disability, veteran status, sexual orientation or marital status, or any other status protected by law. This policy applies to recruitment, hiring, training, appointments, selection, promotion and all other personnel actions and conditions of employment such as compensation, benefits, layoffs and reinstatements, training, tuition assistance and disciplinary measures.

observing industry standards of good faith, fair dealing, and fair employment practices and abiding by local, state, and federal laws proscribing harassment, discrimination, and retaliation; and 3) Other terms.  Said contract was part-written, part-oral, and part-course-of-dealing. Plaintiffs relied on the promises of defendants to enter into said contract.  At no time did defendants intend to perform their obligations under said contract.

11.    At all times, said agreement and employment was subject to 42 United States Code Section 2000e et seq., 42 United States Code Section 12101 et seq., Government Code Section 12900 et seq., the Common Law of the State of California, Labor Code Section 1102.5 et seq., Civil Code Section 1714 et seq., Business and Professions Code Section 17200 et seq., and other provisions of the United States and California Code.

## PERFORMANCE

12.    At all times, Plaintiffs Knapp and Dear fully performed plaintiffs' duties under said contract except when prevented or excused from performing by defendants.

## HOSTILE WORK ENVIRONMENT, DISCRIMINATION, AND RETALIATION

13.    On or about 2004 April 21, Defendant Corporations hired Plaintiff Dear.

*       *       *

Discrimination on the basis of any protected category is expressly prohibited. Furthermore, Wachovia will not tolerate conduct by an employee that harasses another employee, interferes with another's work performance or creates an intimidating, offensive or hostile environment."

14.    On or about 2005 January, Defendant Corporations' Vice President John Robinson evaluated Dear in writing with no areas for improvement.

15.    On or about 2005 March, Defendant Corporations evaluated Dear in writing as superlative.

16.    On or about 2005 June 01, Dear received a lateral transfer to commercial business lender under the management of Defendant Corporations' Senior Vice President Kenneth McGuire and Vice President Ann Nonemaker.  At some point shortly after Dear and Knapp were hired, McGuire and Nonemaker learned that:  1) Plaintiff Dear is a man of same gender affectional/sexual orientation and disabled by dependency—with eighteen years of sobriety, 2) Plaintiff Knapp is a man of same gender affectional/sexual orientation and disabled by HIV disease and dependency—with twenty-one years of sobriety, and 3) Plaintiffs Knapp and Dear are registered domestic partners.

17.    On or about 2005 October, McGuire held a meeting with Dear at "Hooters."  McGuire unsuccessfully encouraged Dear to drink at said meeting.

18.    On or about 2005 November 01, Defendant Corporations hired Plaintiff Knapp.  He was assigned to work as a commercial business lender under the management of McGuire.

19.    On or about 2005 November 03, a co-worker asked Knapp personal questions about Knapp and Dear cohabitating.

20.    On or about 2005 December 23, Defendant Corporations' Worker Michael Stokes brought his son to the worksite.  Stokes introduced the boy to all of the employees except Plaintiffs Knapp and Dear.  Knapp questioned Stokes about the exclusion.  Stokes responded, "He is only three years old.  I do not want to expose him to adult issues.  Besides, I did not think you would be interested in children."

21.  On or about 2005 December 30, Plaintiff Knapp requested training from McGuire and Nonemaker.  Both refused the request.  McGuire routinely provides on-site training to new employees.

22.  On or about 2006 January, Defendant McGuire appointed Plaintiff Dear Co-Chair of the Employee Recognition Committee—Wachovia's corporate giving committee.  From that point on, Dear worked without compensation to increase funding for the Make-A-Wish Foundation by 833%, increased participation in employee morale boosting events, increased donated clothing for the Coats-for-Kids Program by 100%, and initiated a single-day "open house" for introducing low-level to high-level employees.

23.  On or about 2006 January 09, Plaintiff Knapp attended a company dinner in Virginia.  When Knapp took his medication, co-workers asked him why he has to take so many pills.  Co-workers then took Knapp to an adult bar even though Knapp objected to going to the bar because of his sobriety program.

24.  On or about 2006 January 17, Plaintiff Knapp made a further request for training from McGuire.  McGuire denied the request.

25.  On or about 2006 January 18, Plaintiffs Knapp and Dear attended another company dinner.  When Knapp took his medication, a co-worker commented, "That seems like a lot of pills."  The event ended at an Indian casino in which McGuire repeatedly pressed Knapp and Dear to "have a cocktail" and "smoke a cigar."

26.  On or about 2006 January 23, a co-worker called Plaintiff Knapp and informed him that a manager told the co-worker, "You have to work with homosexuals even if you find them repulsive.  Pray for them and document anything they say or do to makes you uncomfortable and the manager will make sure it gets to the proper people."

27.    On or about 2006 January 24, Nonemaker abruptly discontinued regular lunches with Plaintiffs Knapp and Dear.

28.    On or about 2006 February, Plaintiff reduced Dear's territory without cause or reason.

29.    On or about 2006 February 01, Nonemaker moved her office away from Plaintiff Knapp and stopped engaging Knapp and Dear in non-essential conversation.

30.    On or about 2006 February 16, McGuire ordered Plaintiffs Knapp and Dear to seek approval from their supervisors before submitting any loan applications.  No reason for said order was provided.  Knapp and Dear are the only employees so burdened.

31.    On or about 2006 February 16, McGuire demanded that Plaintiff Knapp terminate a conference call with a customer in order to "cover phones."  Company policy and practice is for employees to rotate phone coverage except when an employee has more important business.  Then, the employee may request coverage from a co-worker.  Here, Knapp requested and obtained coverage from a co-worker, and McGuire was aware of said.

32.    On or about 2006 February 22, McGuire described Defendant Corporations' Senior Vice President Debbi Buckland to Plaintiff Dear as "hot" and intimated that she does not wear underwear—"there are no panty lines when she wears slacks."  McGuire repeated the comment on 2006 May.

33.    On or about 2006 March, Defendant Corporations' Vice President Carmie Snider evaluated Dear in writing with minor areas for improvement.

34.    On or about 2006 March, McGuire informed Plaintiffs Knapp and Dear that an anonymous complaint had been made against each to the effect that they were working more than 40 hours per week.  Previously, McGuire though Defendant Corporations' Worker J.C. Monteau instructed Knapp and Dear to feel free to work overtime but to report only eight hours a day and

forty hours per week.  Plaintiff Knapp made a complaint verbally to McGuire to the effect that that Knapp and Dear were being singled out.

35.    On or about 2006 March 02-03, by conference meeting, McGuire warned that employees would be subject to discipline if found to be working over 40 hours per week.  McGuire turned to Plaintiffs Knapp and Dear and stated, "This is because of you two."  Once in private, Dear made a complaint verbally to McGuire to the effect that Knapp and Dear were being excluded from communications and singled out for discipline.

36.    On or about 2006 March 06, McGuire evaluated Plaintiff Knapp verbally for "not being on the floor" even though Knapp was not scheduled to be on the floor.

37.    On or about 2006 March 09, McGuire evaluated Plaintiff Knapp verbally with no areas for improvement but implied that co-workers held negative impressions of Knapp and Dear—"the only opinion that matters is mine."  McGuire furthered, "You guys should not act so much like a couple.  You guys have to understand these are family people and they do not share your lifestyle.  You have done a lot of damage."

38.    On or about 2006 March 14, Plaintiff Knapp telephoned Defendant Corporations' Human Resources Department and made a complaint verbally to the effect that Knapp and Dear "[were] being treated like second class citizens" because of their disabilities; affectional/sexual orientation; complaints of harassment, the hostile work environment, discrimination and retaliation, and the failure to accommodate; and whistleblowing.

39.    On or about 2006 March 15, McGuire informed Plaintiff Knapp that Knapp and Dear needed written permission to use flextime.  No other employees are so burdened.  Plaintiffs Knapp and Dear made a complaint verbally to McGuire regarding the March memorandum.  McGuire responded that the memorandum results from "things you have done to deserve this" and "being

too open about your relationship." Defendant Corporations' Worker Michael David launched an investigation of Knapp and Dear. David asked co-workers "Have you ever had problems with Patrick or Tom? Let me know what you hear."

40. On or about 2006 April, Defendant Corporations held a diversity training program. Co-workers were agitated and commented that the program, "must be because of Patrick and Tom."

41. On or about 2006 April, McGuire assigned Dear to perform a statistical analysis of year-to-date SBA fundings and Wachovia's participation in said. Dear performed said complex work in a satisfactory manner.

42. On or about 2006 May 01, McGuire stopped verbally communicating with Plaintiff Knapp.

43. On or about 2006 May 11, McGuire informed Plaintiff Dear that he was thinking of reducing Dear's territory. No reason for the reduction was given.

44. On or about 2006 May 15, McGuire told Plaintiff Dear that Dear is a quality employee and "lots of other employers would be happy to have you."

45. On or about 2006 May 18, Nonemaker distributed extra territory to co-workers and excluded Plaintiff Knapp from the distribution.

46. On or about 2006 May 23, Nonemaker evaluated Plaintiff Knapp in writing and verbally as above satisfactory with the following areas for improvement—learning (even though Nonemaker refused to provide training to Knapp) and communication. Nonemaker falsely accused Knapp of "trying to deceive one of his customers."

47. On or about 2006 May 30, McGuire and Nonemaker evaluated Plaintiff Knapp verbally and negatively for "taking a loan in." Said loan was "preflighted" by Defendant Corporations and McGuire and Nonemaker knew said status.

48.   On or about 2006 May 31, Plaintiff Knapp asked co-workers to lunch.  Co-workers declined but went to lunch together.

49.   On or about 2006 June, co-workers informed Plaintiff Dear that Manager Karen Mercado admitted she "does not approve of your lifestyle."

50.   On or about 2006 June 02, McGuire imposed a new rule to the effect that Plaintiffs Knapp and Dear were prohibited from "sharing loans."  McGuire allowed other employees with opposite sex orientation—including Defendant Corporations' Workers Thomas Collopy and Michael Stokes—to "share loans."

51.   On or about 2006 June 05, Nonemaker refused to refer prospective clients to Plaintiff Knapp.

52.   On or about 2006 June 06, Defendant Corporations' Vice President Carmie Snider falsely accused Plaintiff Dear of mocking a supervisor by pretending to masturbate—"jerking off."

53.   On or about 2006 June 09, Plaintiff Knapp gave Nonemaker a written customer evaluation to the effect that Knapp performed superlatively.  Nonemaker wrote on it, "Not funded in our territory," and placed said on Knapp's chair.

54.   On or about 2006 June 21, Nonemaker and Plaintiff Knapp attended Defendant Corporations' 'business banker's field visit.'  Even though Knapp was assigned to Nonemaker's old territory and many of Nonemaker's former customers attended the conference, Nonemaker systematically excluded Knapp from most of her meetings, dinners, and other networking; failed to introduce Knapp as the new salesperson at meetings they both attended; and humiliated Knapp in front of a prospective customer.  Throughout, Nonemaker made drinking a central part of meetings.

55.   On or about 2006 June 24, McGuire hosted a "farewell" party for Nonemaker.  Plaintiffs Knapp and Dear were the only co-workers not invited.

56.    On or about 2006 July, Plaintiff Dear achieved the highest volume of quarterly business loan applications.

57.    On or about 2006 July, Wachovia awarded Dear "Second Quarter Employee Recognition."  All other employees who so achieve are sent to the National Association of Government Guaranteed Lenders Conference.  On or about 2006 October 25, Defendant Corporations purchased a ticket for Dear, refused to send Dear, claimed to Dear that it could not afford to send Dear, sent Dear's co-workers—who did not so achieve, and let Dear's ticket go unused.

58.    On or about 2006 July 28, Nonemaker evaluated Plaintiff Knapp unfairly.

59.    On or about 2006 August, McGuire encouraged workers to participate in a "fantasy football league" in which employees network while drinking, gambling, and watching football.

60.    On or about 2006 August 18-20, Plaintiff Dear taught a seminar entitled, "Understanding SBA Loans" for pharmacy school graduates of the University of Florida at Gainesville.

61.    On or about 2006 August 23, Plaintiff Knapp asked Nonemaker if Knapp could provide feedback to Nonemaker.  Nonemaker responded, "No."

62.    On or about 2006 August 25, after spending months (Plaintiff Knapp) and years (Plaintiff Dear) cultivating their territories, McGuire reduced the territory of Knapp by 65% and Dear by 70%-- on the same day.  Dear lost the Gainesville-Ocala-Tallahassee territory.  No reason was provided for reducing Knapp's territory.  A pre-textual reason was given for reducing Dear's territory—a single verbal complaint.  This reason is pre-textual—Knapp and Dear have the highest customer satisfaction according to Defendant Corporation's own "Customer Service Corps Survey." Knapp and Dear both scored 7.0 of 7.0 points.

63.    On or about 2006 August 30, a co-worker admitted to Plaintiff Knapp that a supervisor prohibited said co-worker from helping Knapp or Dear with loans.

64. On or about 2006 September, McGuire interrupted a sales meeting and accused Plaintiff Dear of "slamming applications in to win the [company-wide sales contest]."

65. On or about 2006 September 01, McGuire approved a low interest loan for a prospective client of Plaintiff Knapp, cancelled approval—causing Knapp to lose face with the client, and publicly blamed Knapp.

66. On or about 2006 September 01, a co-worker told Plaintiff Knapp, "I cannot understand why Tom and you are treated with so much disrespect." The same co-worker admitted that senior management instructed him, "Not to work with the two of you."

67. On or about 2006 September 06, co-workers refused to respond to Plaintiff Knapp's greeting.

68. On or about 2006 September 07, Plaintiff Knapp successfully recruited clients. Nonemaker congratulated Knapp privately by email. When other workers successfully recruit clients, an "atta boy" email is broadcast.

69. On or about 2006 October 01, Nonemaker visited the worksite, met with all salespeople except Plaintiff Knapp, and refused to meet with Knapp.

70. On or about 2006 October 12, Vice President Dennis Pomeroy named Plaintiff Knapp, "Shared Success Award Winner." Knapp received no recognition for the award from McGuire or Nonemaker.

71. On or about 2006 October 28, McGuire hosted a Halloween party. Plaintiffs Knapp and Dear were the only co-workers not invited.

72. On or about 2006 November, Wachovia awarded Plaintiff Dear, "Commercial Business Lender of the Month." Said award included presentation of a 30" brass and wood trophy. Historically, said award was presented in monthly sales meetings. When Wachovia presented the award to Dear, it was by an administrative employee placing the trophy on Dear's desk.

73.    On or about 2006 November, Nonemaker stopped responding to Plaintiff Knapp's e- and v-mail contacts.

74.    On or about 2006 November, Nonemaker evaluated Plaintiff Knapp by telephone for "hovering" at a co-worker's cubicle.  The message is clear—Knapp should not even try to socialize with his co-workers.  Knapp made a complaint verbally to Nonemaker to the effect that Nonemaker was not following HR policy in so evaluating him.  Nonemaker disconnected the call.  Knapp returned the telephone call the next day and left a message for Nonemaker to call him. Nonemaker refused to respond.

75.    On or about 2006 November 22, McGuire closed a meeting by reminding employees to be "thankful for your kids and family."

76.    On or about 2006 December 01, Plaintiff Dear achieved $12,000,000.00 in loans.  No managers congratulated Dear.

77.    On or about 2006 December 01, Nonemaker assigned the Pennsylvania business banking group to another employee in spite of implying the group would be assigned to Plaintiff Knapp and knowing that Knapp spent months networking with the group based on said implying. Nonemaker "informed" Knapp during the public introduction of said other employee.

78.    On or about 2006 December 05, Defendant Corporation hosted a blood drive on the worksite which prohibited participation by persons with same gender affectional/sexual orientation.

79.    On or about 2006 December 06, moments before the company holiday party, McGuire called Plaintiff Knapp into his office and evaluated Knapp verbally for "having a negative attitude" and "spreading negativity around the organization."  When Knapp requested details, McGuire refused to provide any and threatened to "write Knapp up for insubordination."

80. On or about 2006 December 07, McGuire through Snider, threatened to misappropriate Plaintiff Dear's commission of $5,160.00, for a loan to St. Cloud Insurance Company. On 2007 January 10, Plaintiff Dear made a Human Resources Department Complaint regarding the threat to misappropriate and above-described harassment, hostile work environment, discrimination and retaliation, failure to accommodate, and whistleblower retaliation. On 2007 January 31, Wachovia paid Dear $4,097.60 of said commission but refused to otherwise investigate, make findings regarding, or abate the Complaint.

81. On or about 2006 December, Defendant Corporations—by said harassment, hostile work environment, discrimination and retaliation, failure to accommodate, and whistleblower retaliation—constructively terminated Plaintiff Knapp.

82. On or about 2006 December 07, Plaintiff Knapp obtained a new position at Barclays Corporation. McGuire learned about said, became agitated, threatened that Knapp should have obtained McGuire's permission before interviewing, and promised to interfere with the position. McGuire asked Plaintiff Dear if he was leaving as well.

83. On or about 2006 December 11, Plaintiff Knapp asked Nonemaker if Knapp would receive his commissions for pending loans. Nonemaker referred Knapp to McGuire. McGuire responded affirmatively. Meanwhile, Nonemaker instructed the heads of credit and processing to withhold said commissions.

84. On or about 2006 December 12, McGuire converted Plaintiff Knapp's commissions.

85. On or about 2006 December 12, while it is the policy and practice of defendants to congratulate employees who advance, neither McGuire nor Nonemaker congratulated Plaintiff Knapp. Nonemaker's announcement email tersely read, "Wanted to let you know that Patrick Knapp's last day with WSBC will be this Friday 12/15."

86. On or about 2006 December 12-15, a rumor spread throughout the worksite to the effect that Plaintiff Dear was transferring. Company rules prohibit an employee from transferring for six months if the employee receives a written warning or probation. To prevent Dear from obtaining a favorable transfer, McGuire through Snider threatened to give Dear a written warning for insubordination. Snider telephoned Dear at his home on a day off to inform Dear about the written warning instead of waiting to inform Dear at work. The "insubordination" was working on the loan of a well-respected customer after Snider told Dear the loan would not be approved. After Dear stopped working on said loan, a senior vice president reversed Snider. The loan was approved.

87. On or about 2006 December 13, Plaintiff Knapp learned that McGuire attempted to interfere with Knapp's transfer.

88. On or about 2006 December 14, Plaintiff Dear won "Top Producer." McGuire "announced" said by throwing two $50.00 gift certificates on Dear's desk and stating, "This is for being top producer in the quarter or something like that." McGuire did not publicly congratulate Dear.

89. On or about 2006 December 14—the day before Plaintiff Knapp's last day, McGuire ordered all of Knapp's systems turned off and barred Knapp from the worksite.

90. On or about 2006 December 21, McGuire hosted a lunch meeting. McGuire discussed all staffing changes except Plaintiff Knapp's transfer.

91. On or about 2006 December 23, co-workers hosted a Christmas party. Neither Plaintiffs Knapp nor Dear were invited.

92. From about 2006 December to 2007 June, Defendants Corporations converted $27,176.00 in commissions of Knapp.

93.  On or about 2007 January, Wachovia awarded Dear "Second Place for 'Kick'in It Into Gear'" for submitting the second highest number of applications.

94.  On or about 2007 January, the Gallop Company released the results of a year-long customer service satisfaction survey.  Gallop awarded Plaintiff Knapp 6.9 out of 7.0 and Plaintiff Dear 6.8 out of 7.0.  Knapp received the highest score, but Dear received the highest score of any current employee.  Defendants failed and refused to recognize the awards.

95.  From about 2007 January to March, Wachovia awarded Plaintiff Dear "First Quarter Employee Recognition" for overall performance.

96.  From about 2007 January to May, Plaintiff Dear became "Top Funder for '7A' Loans" by funding 10 loans for $7,052,200.

97.  On or about 2007 February 01, Plaintiffs Knapp and Dear filed Complaints with the Department of Fair Employment and Housing in which Knapp and Dear detailed the above harassment, hostile work environment, discrimination and retaliation, failure to accommodate, and whistleblower retaliation.  On or about 2007 February 20, the Department issued right to sue letters to Knapp and Dear.  On or about 2007 March 26, Knapp and Dear served said Complaints and letters on defendants by certified mail.

98.  On or about 2007 February 09, Plaintiff Dear filed a Complaint with the Equal Employment Opportunity Commission in which Dear detailed the above harassment, hostile work environment, discrimination and retaliation, failure to accommodate, and whistleblower retaliation.  On or about 2007 June 29, the Commission issued a right to sue letter to Dear.  On or about 2007 March 21, Plaintiff Knapp filed a Complaint with the Equal Employment Opportunity Commission in which Knapp detailed the above harassment, hostile work

environment, discrimination and retaliation, failure to accommodate, and whistleblower retaliation. On or about 2007 June 12, the Commission issued a right to sue letter to Knapp.

99. On or about 2007 April 01, Defendant Corporations advertised approximately fifty (50) positions with an MBA qualification. Defendant Corporations maintain an educational policy which encourages employees to obtain graduate degrees in general and MBAs in particular by reimbursing the employee for tuition and books. Plaintiff Dear applied for said program. McGuire denied the application. The stated reason was "it is not necessary for your career." Said implied that Dear's career would be limited.

100. On or about 2007 April 17, McGuire negatively evaluated Plaintiff Dear as follows:

- The evaluation did not mention accomplishments. For example, the evaluation did not include work with the Employee Recognition Committee, the Gainesville seminar, statistical work for McGuire, or awards.

- Even though Plaintiff Dear received the highest customer satisfaction ranking for 2006 from Gallop, the evaluation scored Dear "3.0" out of "5.0" for customer satisfaction, described Dear as "Effective" but not "Strength" or "Significant Strength," and did not mention the Gallop ranking.

- The evaluation criticized Plaintiff Dear's rejection rate even though other lenders with higher rejection rates are not so evaluated. Snider wrote the draft of the evaluation. Snider previously praised Dear's effort to improve his rejection rate. That praise was not reflected in the final draft of the evaluation prepared by McGuire. Dear made a complaint in writing to Snider on this issue. Snider agreed with Dear.

- Even though Plaintiff Dear had consistently requested more feedback from Wachovia and complained to McGuire about not receiving said, the evaluation scored Dear "3.0" out of "5.0" for "Asks for Feedback and Responds to Feedback."

- The evaluation scored Dear "3.0" out of "5.0" for "Promoting Diversity." The evaluation did not mention Dear's outreach to his co-workers and supervisors or Dear's work with the Employee Recognition Committee, Human Resources Department, the Department of Fair Employment and Housing, or the Equal Employment Opportunity Commission.

- The evaluation scored Dear "4.0" out of "5.0" for "Achieving Goals" in spite of the fact that the relevant Goal was funding $10,000,000.00 in loans, and Dear funded $14,208,690.00.

101. On or about 2007 May 11, Defendant Corporations promoted Dear to Senior Commercial Lender beginning 2007 June 01 with a base salary increase to $50,000.00 and the title Assistant Vice President.

102. On or about 2007 May 21, Defendant Corporations awarded Plaintiff Dear, "Rookie of the Year."

103. On or about 2007 May 21, Defendant Corporations awarded Plaintiff Dear "First Quarter Employee Recognition."

104. On or about 2007 May, Defendant Corporations awarded Plaintiff Dear "Commercial Business Lender of the Month." Said award included presentation of a 30" brass and wood trophy. Historically, said award was presented in monthly sales meetings. Defendant Corporations presented the award to Dear by silently placing the trophy on Dear's desk.

105. On or about 2007 May 29, McGuire through Snider gave Dear a verbal warning. The stated basis for the warning was that Dear's Paradise Vending, Anderson Restaurant, B Band T, Auro-

Turf, and Never Quit loans were rejected by the Underwriting Department.  Underwriting failed to give a reason for the rejections.  McGuire socializes with key Underwriting Department officers.  McGuire through Snider prohibited Dear from contacting Underwriting about the rejections.  Paradise and Anderson were funded by competitors.

106.  On or about 2007 June 14, McGuire through Snider reversed Dear's promotion.

107.  Defendant Corporations held their annual Clearlake Camping Retreat and invited all male Commercial Business Lenders except Dear.

108.  On or about 2007 June 11 and 13, Plaintiff Dear submitted Sales Information Worksheets for Outdoor Recreation Concepts and Summer Insurance.  Dear requested feedback from Snider. Snider refused to provide said.

109.  On or about 2007 June 15, McGuire through Snider gave Dear a written warning.  The stated basis was that Defendant Corporations' Senior Vice Presidents John Duce and Debra Buckland made complaints against Dear and demanded that all of Dear's loans be submitted first to a gatekeeper.  Plaintiff Dear asked McGuire through Snider the content of the complaints. McGuire through Snider refused to respond.  Plaintiff Dear contacted both Duce and Buckland directly.  Duce responded that he never asked for a gatekeeper and Buckland refused to take Dear's call.

110.  On or about 2007 June 27, Dear made a written complaint to McGuire to the effect that the written warning was discriminatory and retaliatory.  McGuire refused to take, process, investigate, make findings regarding, or abate said complaint.

111.  On or about 2007 June 29, McGuire through Snider appointed Defendant Corporations' Worker Michael David to act as gatekeeper for Dear's loans.  Buckland instructed Dear's customers that

all of Dear's loans were being processed through a gatekeeper because the gatekeeper "is competent and experienced"—implying that Dear was not competent or experienced.

112.   On or about 2007 July 02, Dear submitted an application for a $156,000.00 loan to First Coast Mortuary to Snider.  Snider approved submission of the application.  David rejected the application.  Defendant Corporations' Senior Vice President Richard Watts reversed David's rejection.  Watts reversed himself.  The loan was rejected.

113.   On or about 2007 July 10, McGuire through Snider contacted Dear's customers, prohibited said from directly contacting Dear, and advised the customers to only contact David.

114.   On or about 2007 July 10, David pulled a loan application from Dear's desk, David asked Dear if the loan met qualifications, Dear informed David that the loan met qualifications, David investigated Dear's response.  David found the loan to be qualified.

115.   On or about 2007 July 20, Dear submitted applications for Lakeview Liquors and All Satellite Systems.  Dear requested feedback from McGuire through Snider.  McGuire through Snider refused to provide said feedback.

116.   On or about 2007 August 11, Defendant Corporations—by said harassment, hostile work environment, discrimination and retaliation, failure to reasonably accommodate, and whistleblower retaliation—constructively terminated Dear.

117.   Plaintiff Knapp lost income as follows:  Start date for new employer Barclays Corporation is about 2006 December 07.  Wachovia base $40,000.00; Barclays base $72.500.00; Difference ($32,500.00); Commissions of $27,176.00 for funding year 2006; Commissions of $98,000.00 for funding year 2007; Commissions of $140,000.00 for funding year 2008; Growing commissions for following years until 2018; Pension, 401k, and stock option benefits from 2018 to 2032; and Medical benefits from 2018 to 2032.  Dear lost income as follows:  Start date for

new employer Popular SBC Corporation is about 2007 September 01; Wachovia base $45,000.00; Popular base $75,000.00; Difference ($30,000.00); Commissions of $20,400.00 for funding year 2006; Commissions of $74,000.00 for funding year 2007; Commissions of $120,000.00 for funding year 2008; Growing commissions for following years until 2027; and Pension, 401k, and stock option benefits from 2027 to 2041.

## CONTINUING VIOLATION

118.    The harassment, hostile work environment, discrimination and retaliation, failure to reasonably accommodate, whistleblower retaliation, converting property, intentionally causing injury, committing wrongful business acts, and breach of contracts constitutes a CONTINUING VIOLATION of 42 United States Code Section 2000e et seq., 42 United States Code Section 12101 et seq., Government Code Section 12900 et seq., the Common Law of the State of California, Labor Code Section 1102.5 et seq., Civil Code Section 1714 et seq., Business and Professions Code Section 17200 et seq., other provisions of the United States and California Code, and the public policy of the United States and State of California as that policy is set forth in the United States Constitution, United States Code, Constitution of the State of California, and California Code.

## ACTIONABILITY

119.    The harassment, hostile work environment, discrimination and retaliation, failure to reasonably accommodate, whistleblower retaliation, converting property, intentionally causing injury, committing wrongful business acts, and breach of contracts is actionable under 42 United States Code Section 2000e et seq., 42 United States Code Section 12101 et seq., Government Code

Section 12900 et seq., the Common Law of the State of California, Labor Code Section 1102.5 et seq., Civil Code Section 1714 et seq., Business and Professions Code Section 17200 et seq., and other provisions of the United States and California Code.

120.   Plaintiffs exhausted their administrative remedies.

PUNITIVE DAMAGES

121.   Said misconduct was committed with malice, fraud, oppression, and in reckless and knowing violation of the rights of plaintiffs under the same codes.  Said misconduct was committed with actual knowledge or in reckless disregard of its likely consequences as evidenced by:  The intentional nature of such misconduct, the fact that such misconduct generally and usually causes physical and emotional injuries, the fact that defendants were aware of the kind nature and exceptional vulnerability of plaintiffs and acted in spite of said awareness, the fact that defendants occupy a position of particular power over plaintiffs as their employer and committed such acts in spite of said knowledge, and the fact that defendants were aware that such misconduct is proscribed but committed such misconduct regardless of proscription.

DAMAGES

122.   As a proximate result of the stated misconduct of defendants, plaintiffs suffered economic damages including, but not limited to:  Plaintiff Knapp lost income as follows:  Start date for new employer Barclays Corporation is about 2006 December 07.  Wachovia base $40,000.00; Barclays base $72.500.00; Difference ($32,500.00); Commissions of $27,176.00 for funding year 2006; Commissions of $98,000.00 for funding year 2007; Commissions of $140,000.00 for funding year 2008; Growing commissions for following years until 2018; Pension, 401k, and stock option benefits from 2018 to 2032; and Medical benefits from 2018 to 2032.  Dear lost

income as follows:  Start date for new employer Popular SBC Corporation is about 2007 September 01; Wachovia base $45,000.00; Popular base $75,000.00; Difference ($30,000.00); Commissions of $20,400.00 for funding year 2006; Commissions of $74,000.00 for funding year 2007; Commissions of $120,000.00 for funding year 2008; Growing commissions for following years until 2027; and Pension, 401k, and stock option benefits from 2027 to 2041.

123.    As a further proximate result of the stated misconduct of defendants, plaintiffs suffered non-economic damages including but not limited to:  1) Lost reputation including personal, financial, professional, and credit; 2) Physical and emotional injuries including severe emotional distress; and 3) Pain, suffering, and inconvenience.  Plaintiff Knapp has been treated for severe emotional distress, depression, and stress-related acid reflux disease by Dr. Jason Flamm, MD, of Kaiser Hospital, Morris Avenue, Sacramento.  Plaintiff Dear has been treated for severe emotional distress and depression by Dr. N.P. Bhosale, MD, of Kaiser Hospital, Roseville; stress-related tooth grinding including loss of a tooth by Dr. Jeffrey McClure, DDS, Blue Oak Dental, 15 Sierra Gate Plaza, Roseville (916.786.6777), and Dr. Kevin Chen, DDS, Capitol Peridontal Group, 2428 Professional Drive, Suite 100, Roseville (916.786.6585); and stress-related acid reflux disease by Dr. Jerry L. Lai, MD, 1001 Riverside Drive, Roseville.

INJUNCTIVE RELIEF

124.    No adequate remedy exists at law for the injuries suffered by plaintiffs herein insofar as plaintiffs cannot be returned to whole absent injunctive relief.  If this court does not grant injunctive relief of the type and for the purpose specified below, plaintiffs will continue to suffer irreparable injury.  Therefore, plaintiffs request the following injunctive relief:  An order enjoining defendants from:  1) Continuing to fail and refuse to take, process, investigate, make findings

regarding, or abate the complaints of plaintiffs, 2) Continuing to misappropriate the commissions of plaintiffs, 3) Continuing to misrepresent the quality of work of plaintiffs, 4) Continuing to harass employees with disabilities or of same gender affectional/sexual orientation, 5) Continuing to maintain a hostile work environment, 6) Continuing to discriminate and retaliate against employees with disabilities or of same gender affectional/sexual orientation and employees who make complaints of discrimination and retaliation, 7) Continuing to fail and refuse to accommodate the disabilities of employees, and 8) Continuing to retaliate against whistleblowers.

I.

FIRST CAUSE OF ACTION

FAILING TO ACCOMMODATE DISABILITY, MAINTAINING A HOSTILE WORK

ENVIRONMENT, AND DISCRIMINATION AND RETALIATION

(42 United States Code 2000e et seq., and 42 United States Code 12101 et seq.)

Alleged Against All Defendants

125.  Plaintiffs re-allege the foregoing.

126.  **42 United States Code 2000e-2 provides:**

**"It shall be an unlawful employment practice for an employer—(1) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) To limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."**

**42 United States Code 2000e-3 provides:**

**"It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or re-training, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice**

**made an unlawful employment practice by this subchapter, or because he has made**

**a change, testified, assisted, or participated in any manner in an investigation,**

**proceeding, or hearing under this subchapter."**

**42 United States Code Section 12112(a) provides:**

**"No [employer] shall discriminate against a qualified individual with a disability**

**because of the disability of such individual in regard to job application procedure,**

**the hiring, advancement, or discharge of employees, employee compensation, job**

**training, and other terms, conditions, and privileges of employment."**

127. The misconduct of defendants constitutes violations of 42 United States Code Section 2000e et seq., and 42 United States Code Section 12112(a) and is actionable under the same, 42 United States Code Section 1988, 42 United States Code Section 2000e-4 to -9, and 42 United States Code 12117(a).

128. As a proximate result of said misconduct, plaintiffs incurred damages as alleged.

129. Plaintiffs pray relief as follows.

II.

SECOND CAUSE OF ACTION

FAILING TO ACCOMMODATE DISABILITY, MAINTAINING A HOSTILE WORK

ENVIRONMENT, AND DISCRIMINATION AND RETALIATION

(Government Code Section 12900 et seq.)

Alleged Against All Defendants

130.  Plaintiffs re-allege the foregoing.

131.  **Government Code 12920 provides:**

> **"It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, or age."**

**Government Code 12921 provides:**

> **"The opportunity to seek, obtain, and hold employment without discrimination because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, or age is hereby recognized as and declared to be a civil right."**

**Government Code 12940 provides:**

> **"It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification[:]**

**(a) For an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, or sex of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.**

*     *     *

**(f) For any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this act, or because the person filed a complaint, testified, or assisted in any proceeding under this part."**

132.    The misconduct of defendants constitutes violations of Government Code 12900 et seq., and is actionable under the same.

133.    As a proximate result of said misconduct, plaintiffs incurred damages as alleged.

134.    Plaintiffs pray relief as follows.

III.

THIRD CAUSE OF ACTION

DISCRIMINATION AND RETALIATION

(Common Law)

Alleged Against All Defendants

135.   Plaintiffs re-allege the foregoing.

136.   **Common Law provides discrimination and retaliation in employment has the following elements:**

> **1) A public policy; 2) Conduct by the employer in violation of public policy, such as termination or other adverse employment action because of a) race, national origin, color, sex, or sexual orientation, or b) in retaliation for an employee's participation in legally protected activity or refusal to commit an illegal act; and**

> **3) Damages resulting from the adverse employment action.**

> **<u>Tameny v. Atlantic Richfield Co.</u> (1980) 27 Cal. 3d 167, 174 and 178.**

137.   The misconduct of defendants constitutes discrimination and retaliation in employment and is actionable under common law.

138.   As a proximate result of said misconduct, plaintiffs incurred damages as alleged.

139.   WHEREFORE, plaintiffs pray judgment as herein set forth.

IV.

FOURTH CAUSE OF ACTION

WHISTLEBLOWER RETALIATION

(Labor Code 1102.5)

Alleged Against All Defendants

140.    Plaintiffs re-allege the foregoing.

141.    **Labor Code 1102.5 provides:**

> **"(a)    An employer may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.**

> **(b)    An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.**

> **(c)    An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.**

> **(d)    An employer may not retaliate against an employee for having exercised his or her rights under subdivision (a), (b), or (c) in any former employment.**

**(e)** **A report made by an employee of a government agency to his or her employer is a disclosure of information to a government or law enforcement agency pursuant to subdivisions (a) and (b)."**

142.  The misconduct of defendants constitutes violations of Government Code 1102.5 et seq., and is actionable under the same.

143.  As a proximate result of said misconduct, plaintiffs incurred damages as alleged.

144.  Plaintiffs pray relief as follows.

V.

FIFTH CAUSE OF ACTION

CONVERSION

(Common Law)

Alleged Against All Defendants

145.    Plaintiffs re-allege the foregoing.

146.    **Common Law provides Conversion is:**

**1) The defendant taking or interfering with, 2) Tangible personal property of plaintiff, 3) With the intent to exercise dominion by an affirmative act or an omission, and 4) Causing injury to plaintiff. <u>Zaslow v. Kroenert</u> (1946) 29 Cal. 2d 541, 549; <u>Hartford Financial Corp. v. Burns</u> (1979) 96 Cal. App. 3d 591, 602.**

147.    The misconduct of defendants constitutes conversion under common law and is actionable under the same.

148.    As a proximate result of said misconduct, plaintiffs incurred damages as alleged.

149.    WHEREFORE, plaintiffs pray judgment as herein set forth.

VI.

SIXTH CAUSE OF ACTION

INTENTIONALLY CAUSING INJURY

(Common Law)

Alleged Against All Defendants

150.    Plaintiffs re-allege the foregoing.

151.    **Common law provides intentionally causing injury is:**

**1) The intention of defendant to cause or reckless disregard of defendant of the probability of causing severe emotional distress to plaintiff; 2) Conduct by defendant that is outside all bounds tolerated in a civilized community; and 3) Suffering by plaintiff of fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, or worry as a proximate result thereof.**

**<u>Newby v. Alto Riviera Apartments</u> (1976) 60 Cal. App. 3d 288, 298; <u>Marine Point, Ltd. v. Wolfson</u> (1982) 30 Cal. 3d 721; <u>Golden v. Dungan</u> (1971) 20 Cal. App. 3d 295, 311; <u>Fletcher</u> (1970) 10 Cal. App. 3d 376, 397.**

152.    The misconduct of defendants constitutes intentionally causing injury under common law and is actionable under the same.

153.    As a proximate result of said misconduct, plaintiffs incurred damages as alleged.

154.    WHEREFORE, plaintiffs pray judgment as herein set forth.

VII.

SEVENTH CAUSE OF ACTION

WRONGFUL BUSINESS ACT

(Business and Professions Code 17200 et seq.)

Alleged Against All Defendants

155.   Plaintiffs re-allege the foregoing.

156.   **Business and Professions Code 17200 provides a cause of action by an injured party against a person whose unlawful, unfair, or fraudulent business act or practice caused said injury.**

157.   The misconduct of defendants constitutes violations of Business and Professions Code 17200 et seq., and is actionable under the same.

158.   As a proximate result of said misconduct, plaintiffs incurred damages as alleged.

159.   WHEREFORE, plaintiffs pray judgment as herein set forth.

VIII.

EIGHTH CAUSE OF ACTION

BREACH OF CONTRACT

(Civil Code and Common Law)

Alleged Against All Defendants

160.    Plaintiff re-alleges the foregoing.

161.    **The Civil Code and Common Law define and provide a cause of action for breach of a contract.**

162.    The misconduct of defendants constitutes breach of contract under the Civil Code and common law and is actionable under the same.

163.    As a proximate result of said misconduct, plaintiffs incurred damages as alleged.

164.    WHEREFORE, plaintiffs pray judgment as herein set forth.

# IX.

## PRAYER

WHEREFORE, plaintiffs pray judgment against each defendant, jointly and severally, for:

1. Economic damages according to proof—including, but not limited to:  Knapp) Start date for new employer Barclays Corporation is about 2006 December 07.  Wachovia base $40,000.00; Barclays base $72,500.00; Difference ($32,500.00); Commissions of $27,176.00 for funding year 2006; Commissions of $98,000.00 for funding year 2007; Commissions of $140,000.00 for funding year 2008; Growing commissions for following years until 2018; Pension, 401k, and stock option benefits from 2018 to 2032; and Medical benefits from 2018 to 2032; Dear) Start date for new employer Popular SBC Corporation is about 2007 September 01; Wachovia base $45,000.00; Popular base $75,000.00; Difference ($30,000.00); Commissions of $20,400.00 for funding year 2006; Commissions of $74,000.00 for funding year 2007; Commissions of $120,000.00 for funding year 2008; Growing commissions for following years until 2027; and Pension, 401k, and stock option benefits from 2027 to 2041.  Demand:  Over $5,000,000.00 per plaintiff.

2. Non-economic damages according to proof—including, but not limited to:  1) Lost reputation including personal, financial, professional, and credit; 2) Physical and emotional injuries including severe emotional distress; and 3) Pain, suffering, and inconvenience.  Plaintiff Knapp has been treated for severe emotional distress, depression, and stress-related acid reflux disease by Dr. Jason Flamm, MD, of Kaiser Hospital, Morris Avenue, Sacramento.  Plaintiff Dear has been treated for severe emotional distress and depression by Dr. N.P. Bhosale, MD, of Kaiser Hospital, Roseville; stress-related tooth grinding including loss of a tooth by Dr. Jeffrey

McClure, DDS, Blue Oak Dental, 15 Sierra Gate Plaza, Roseville (916.786.6777), and Dr. Kevin Chen, DDS, Capitol Peridontal Group, 2428 Professional Drive, Suite 100, Roseville (916.786.6585); and stress-related acid reflux disease by Dr. Jerry L. Lai, MD, 1001 Riverside Drive, Roseville.  Demand:  Over $5,000,000.00 per plaintiff.

3.    General damages according to proof.

4.    Special damages according to proof.

5.    Nominal damages according to proof.

6.    Disgorgement of profits obtained by said misconduct.

7.    Punitive damages in an amount sufficient to punish defendants for their unlawful conduct, deter defendants from repeating said conduct in the future, and provide an example for others pursuant to 42 United States Code Section 2000e et seq. (including, but not limited to, 42 United States Code Section 2000e-5(k) et seq.), 42 United States Code Section 12101 et seq. (including, but not limited to, 42 United States Code Section 2000e-5(k) et seq.), Government Code Section 12900 et seq. (including, but not limited to Government Code Section 12965(b) et seq.), the Common Law of the State of California, Labor Code Section 1102.5 et seq. (and Code of Civil Procedure 1021.5 et seq.), Civil Code Section 1714 et seq., Business and Professions Code Section 17200 et seq. (and Code of Civil Procedure Section 1021.5 et seq.), other provisions of the United States and California Code, Civil Code Section 1717 et seq., Code of Civil Procedure Section 1033.5 et seq., and any other applicable law.  Demand:  Over $5,000,000.00 per plaintiff.

8.    Multipliers pursuant 42 United States Code Section 2000e et seq. (including, but not limited to, 42 United States Code Section 2000e-5(k) et seq.), 42 United States Code Section 12101 et seq. (including, but not limited to, 42 United States Code Section 2000e-5(k) et seq.), Government Code Section 12900 et seq. (including, but not limited to Government Code Section 12965(b) et

seq.), the Common Law of the State of California, Labor Code Section 1102.5 et seq. (and Code of Civil Procedure 1021.5 et seq.), Civil Code Section 1714 et seq., Business and Professions Code Section 17200 et seq. (and Code of Civil Procedure Section 1021.5 et seq.), other provisions of the United States and California Code, Civil Code Section 1717 et seq., Code of Civil Procedure Section 1033.5 et seq., and any other applicable law.

9.      Penalties and statutory damages pursuant to 42 United States Code Section 2000e et seq. (including, but not limited to, 42 United States Code Section 2000e-5(k) et seq.), 42 United States Code Section 12101 et seq. (including, but not limited to, 42 United States Code Section 2000e-5(k) et seq.), Government Code Section 12900 et seq. (including, but not limited to Government Code Section 12965(b) et seq.), the Common Law of the State of California, Labor Code Section 1102.5 et seq. (and Code of Civil Procedure 1021.5 et seq.), Civil Code Section 1714 et seq., Business and Professions Code Section 17200 et seq. (and Code of Civil Procedure Section 1021.5 et seq.), other provisions of the United States and California Code, Civil Code Section 1717 et seq., Code of Civil Procedure Section 1033.5 et seq., and any other applicable law.

10.     Interest.

11.     Injunctive relief as specified.

12.     Attorney's fees with a loadstar pursuant to 42 United States Code Section 2000e et seq. (including, but not limited to, 42 United States Code Section 2000e-5(k) et seq.), 42 United States Code Section 12101 et seq. (including, but not limited to, 42 United States Code Section 2000e-5(k) et seq.), Government Code Section 12900 et seq. (including, but not limited to Government Code Section 12965(b) et seq.), the Common Law of the State of California, Labor Code Section 1102.5 et seq. (and Code of Civil Procedure 1021.5 et seq.), Civil Code Section

1714 et seq., Business and Professions Code Section 17200 et seq. (and Code of Civil Procedure Section 1021.5 et seq.), other provisions of the United States and California Code, Civil Code Section 1717 et seq., Code of Civil Procedure Section 1033.5 et seq., and any other applicable law.

13.  Costs of suit.

14.  Other and further relief.

## X.

## VERIFICATION

We, Plaintiff Patrick Knapp and Plaintiff Thomas Dear, read the foregoing Complaint.  We know the contents thereof.  The Complaint is true of our own knowledge.  If called upon, we could and would so testify.  We make this Complaint under penalty of perjury under the laws of the State of California. This verification is executed in San Francisco on 2007 September 01.

/s/Patrick Knapp   /s/Thomas Dear

XI.

SIGNATURE OF ATTORNEY

2007 September 01                    /s/Philip Steven Horne, Esq.
                                     Philip Steven Horne, Esq.
                                     LAW OFFICES OF PHILIP STEVEN HORNE, ESQ.
                                     ATTORNEYS FOR PLAINTIFFS KNAPP AND DEAR